JOURNAL ENTRY AND OPINION
Appellant C.K. appeals her finding of delinquency entered by the Cuyahoga County Court of Common Pleas, Juvenile Division. On January 25, 2000, a complaint was filed alleging that the appellant, then twelve years of age, was delinquent because she knowingly did cause or attempted to cause physical harm to another with a knife in violation of R.C.2903.11(A)(2), a felony of the second degree. The trial court found the appellant to be delinquent and committed her to the custody of the Ohio Youth Services for a minimum of one year.
A review of the four hearing transcripts submitted to this court show that the appellant was a child with multiple family and personal problems. The original delinquency charges arose out of an incident whereupon the appellant entered the bathroom to perform her chores. The appellant's twenty-year-old brother followed her into the bathroom. At this point she fled to the kitchen, where the lights were off, and picked up a knife. The resulting cut on her brother's hand required stitches.
The record reveals that on February 15, 2000, the appellant entered an admission to the complaint. The trial court was informed that the appellant was in fifth grade, a good student with a good attendance record, and had no prior record. At the request of the state, the court marked the matter heard and submitted and continued the matter. The court explained to the appellant that when a matter is marked heard and submitted, the court makes no formal finding of guilt. The court informed her that when the case was reviewed, if she was doing well and had stayed out of trouble, the charges would be dismissed. Conversely, if more problems arose, the appellant would be found guilty and sentence would be imposed. No mention was made of the possible sentence. The trial court ordered that the appellant continue supervision under her probation officer. The appellant's probation officer was directed to refer the appellant to an anger-management program and a carrying-concealed-weapons program.
At the beginning of June 2000, the appellant was before the trial court on a misdemeanor domestic violence charge. The state withdrew the domestic violence charge and the trial court proceeded to review the felonious assault charge which had been previously heard and submitted. The probation officer informed the court that the appellant had periodic difficulties. The appellant continued to attend school, but after leaving school on Fridays, she would not return home until Saturday or Sunday, and never informed her mother of her whereabouts. During one of these absences, the appellant was raped. After a period of time, the family moved. Attendance problems occurred with school and problems arose between the appellant and her new neighbors. There was also evidence that the appellant was drinking. Due in part to her mother's ill health, the appellant's family was unwilling to permit her to return home. The court informed the appellant that she was on "a fast track to some real serious trouble." (T. 6/6/00 p. 11). The court again marked the matter heard and submitted. The appellant was referred to the "Service Review Team for Placement Planning Consideration" and placed in shelter care until the completion of a psychological evaluation.
On June 28, 2000, the appellant's case was reviewed once more by the trial court. The probation officer informed the court that the psychological evaluation had just been received and that no placement planning had been completed. The probation officer, after consulting with the doctor and others, indicated that removing the appellant from her home and placing her in a residential setting would be appropriate. Through a letter, the appellant's mother requested that she be returned home. The court also learned from the probation officer that the appellant was unable to attend the anger-management program and carrying-concealed-weapon program due to her mother's ill health.
There is an indication in the record that, at least in one instance, the court had given some consideration to referring the appellant to the Cuyahoga County Department of Children and Family Services (T. 6/28/00 p. 5). The appellant's counsel indicated that to be an appropriate recommendation. He also stated that the appellant had not been attending school since the rape and that it was the rape which precipitated the family's change of residence. In regard to the underlying felonious assault charge, counsel pointed out that the psychological report states that, given the level of violence in the family, and the fear the family has of the appellant's twenty-year-old brother, it is not unreasonable to suggest that the appellant was acting in self-defense. The appellant's twenty-year-old brother, the victim, spoke to the court and withdrew the charges against the appellant. He indicated that the stabbing was "totally an accident" (T. 6/28/00 p. 8).
The court indicated its concern regarding the report received regarding the appellant's behavior at the shelter care. Ultimately, the court determined that the heard and submitted status should be continued. The appellant was referred to the "MST Program and/or Wraparound Program." The involvement of the probation officer was continued.
At the next hearing held on September 14, 2000, there was a discussion on the record indicating that the appellant had been charged with disrupting public service and two additional felonious assaults. An agreement was reached and the appellant admitted to two counts of aggravated menacing and one count of obstruction of official business. The court then proceeded with the dispositional hearing on the heard and submitted felonious assault. The probation officer recommended that a residential placement should be explored. The probation officer then stated that he made a referral to the "wraparound program or an MST program" (T. 9/14/00 p. 5). The meeting with family members was to have occurred prior to the additional charges, which consisted of wielding a knife at home and threatening family members. The appellant had been placed at Lincoln Place where her behavior was poor. She was transferred from Lincoln Place to the detention center, where her behavior had also been inappropriate. Ultimately, the probation officer recommended residential placement, and if that was not acceptable to the court, then he recommended that the appellant should be placed with the Youth Development Center.
Counsel for the appellant reminded the court that the appellant was a victim of rape and that the psychological report ties her behavior to the assault. Counsel also spoke of the family dynamics and urged the court to place the appellant in a residential treatment. The court spoke with the appellant for a brief time. The court then stated to the appellant:
 Cynthia, you've got some issues to deal with, but I understand that you've also got to understand that there are rules that we've all got to abide by, and if you can't understand that one, you're sent by the court to a place like Lincoln Place. And when you can't understand that, when you're kicked out of Lincoln Place and brought back to the detention center, than (sic) you've got to learn it. And I think the best way for you to learn is at the Ohio Department of Youth Services, on file 557. I am adjudicating you to be delinquent there. We gave you a break, we marked that heard and submitted, that didn't work. It's a felony of the second degree. You're going to be there for a minimum of a year, and if you continue behaving like this, you will be there much longer. You get involved in more altercations and fights, they'll file charges on you. And in a short period of time, you can be transferred and tried as an adult. You'll end up at Marysville if you keep up this behavior. So you've got to make some decisions about how you want to live the rest of your life.
On September 25, 2000, the trial court's final order of disposition was journalized. The appellant was placed in the legal custody of the Ohio Department of Youth Services at that time.
The appellant sets forth three assignments of error.
The appellant's first assignment of error:
 THE TRIAL COURT ERRED BY FAILING TO ENTER A TIMELY DETERMINATION OF ADJUDICATION PURSUANT TO THE JUVENILE RULES OF PROCEDURE.
The appellant argues that the trial court improperly postponed her adjudication in excess of six months in violation of Juv.R. 29(F)(2)(c).
In State ex rel. Driscoll v. Hunter (March 5, 1998), Cuyahoga App. No. 72905, unreported, this court noted that Juv.R. 29(A) provides:
 The failure of the court to hold an adjudicatory hearing within any time period set forth in this rule does not affect the ability of the court to issue any order otherwise provided for in statute or rule and does not provide any basis for contesting the jurisdiction of the court or the validity of any order of the court.
Additionally, the Ohio Supreme Court has held that the juvenile court does not lose jurisdiction by failing to adhere to the time limits set forth in Juv.R. 29. Linger v. Weiss (1979), 57 Ohio St.2d 97.
The appellant's first assignment of error is overruled.
The third assignment of error is dispositive and will be considered next. The appellant's third assignment of error:
 THE COURT ERRED IN ACCEPTING APPELLANT'S ADMISSION OF THE COMPLAINT AND ERRED IN ITS RESULTING ADJUDICATION.
The appellant asserts that the trial court erred in failing to reveal to her, prior to her plea, the possible sentence she could receive should the court adjudicate her to be delinquent. Juv.R. 29(D) provides:
(D) Initial procedure upon entry of an admission.
 The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
 The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule.
A plea of true in a juvenile proceeding, pursuant to Juv.R. 29, is analogous to a guilty plea made by an adult pursuant to Crim.R. 11 in that both require that a trial court personally address the defendant on the record with respect to the areas set forth in the rules. In re Royal
(1999), 132 Ohio App.3d 496; In re Jenkins (1995), 101 Ohio App.3d 177. Both Crim.R. 11 and Juv.R. 29 require the respective courts to make careful inquiries in order to insure that the admission or guilty plea is entered voluntarily, intelligently and knowingly. In re Flynn (1995),101 Ohio App.3d 778, 781; In re McKenzie (1995), 102 Ohio App.3d 275,277. In order to satisfy the requirements of Juv.R. 29(D), "the court must address the youth personally and conduct an on-the-record discussion to determine whether the admission is being entered knowingly and voluntarily." In re West (1998), 128 Ohio App.3d 356. Juv.R. 29(D) also places an affirmative duty upon the juvenile court requiring the court to personally address the juvenile before the court and determine that the juvenile, not merely the attorney, understands the nature of the allegations and the consequences of entering the admission. In reBeechler (1996), 115 Ohio App.3d 567. The failure of the juvenile court to substantially comply with Juv.R. 29(D) has a prejudicial effect necessitating a reversal of the adjudication so that the juvenile may plead anew. In re Doyle (1997), 122 Ohio App.3d 767, 772; In reHendrickson (1996), 114 Ohio App.3d 290.
At least one court has found troubling the failure to provide information to the juvenile regarding the possible sentence. In reHenderickson (1996), 114 Ohio App.3d 290. The court concluded that Juv.R. 29 and the rudiments of due process require a trial court to apprise the juvenile, at least briefly, of the court's dispositional options. See, also, In re Holcomb (Jan. 24, 2002), Cuyahoga App. No. 79378, unreported.
In the case sub judice, the trial court failed to impart to the appellant the possible consequences of entering a plea when it failed to inform her of the possible sentencing alternatives. The court's failure to address this issue is troubling in this instance because of the age of the appellant, the obvious family difficulties, her lack of previous experience in the juvenile justice system, and the length of time the case was pending. This barely thirteen-year-old appellant was sentenced to the Ohio Department of Youth Services (ODYS) for an altercation with her (much) older brother despite the fact that the court had every reason to believe the appellant was defending herself. The appellant's sojourn with ODYS might last until she is eighteen, or even twenty-one. This must be considered disproportionate when compared to the usual circumstances for which children are adjudicated delinquent and placed with ODYS, i.e;
extensive juvenile records and/or for crimes such as rape and murder. Under the circumstances presented herein, the trial court did not insure that appellant "was making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission" as is required by Juv.R. 29(D). This prejudicial error requires a reversal of the adjudication.
The appellant's third assignment of error is well taken.
The second assignment of error:
 THE TRIAL COURT ERRED IN ITS JUDGMENT ENTRY WHERE IT COMMITTED THE APPELLANT TO CUSTODY REFERENCING AN INCORRECT CODE SECTION.
In light of the third assignment of error, this assignment of error is moot pursuant to App.R. 12(A).
Judgment reversed and remanded.
This cause is reversed and remanded.
It is, therefore, considered that said appellant recover of said appellee her costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
TIMOTHY E. McMONAGLE, A.J., and TERRENCE O'DONNELL, J., CONCUR.